## ESDORN et al. v. BROOKLYN MOULDING CO., Inc.

### SAME v. M. GREENSPAN & CO., Inc.

### Nos. 7044, 7045.

District Court, E. D. New York.
March 21, 1934.

Munn, Anderson, Stanley, Foster & Liddy, of New York City (T. Hart Anderson, Orson D. Munn, and Daniel H. Kane, all of New York City, of counsel), for plaintiffs.

John D. Morgan, of New York City (H. N. Durham and Martin T. Fisher, both of New York City, of counsel), for Brooklyn Moulding Co., Inc.

Maurice H. Matzkin, of Brooklyn, N. Y. (J. G. M. Browne, of Brooklyn, N. Y., of counsel), for M. Greenspan & Co., Inc.

CAMPBELL, District Judge.

The two above-entitled suits were brought by the same plaintiffs against different defendants, for alleged infringement of the same patent, and by consent were tried together.

The above-entitled suits are based upon patent No. 1,902,769, issued to John H. Esdorn, for Store Fixture Display Moulding, dated March 21, 1933, on an application filed February 18, 1932.

The plaintiff John H. Esdorn is a citizen of the United States and a resident of the state of New York, and the Southern District thereof, and the patentee and owner of the patent in suit; the plaintiff Esdorn Lumber Corporation is a New York corporation, having a place of business in the Southern District thereof, and manufactures moulding of the type disclosed in the patent in suit, with the permission of the patentee.

The defendant Brooklyn Moulding Company, Inc., in the first above-entitled suit, is a New York corporation, with its place of business at Richmond Hill, in the borough of Queens in this district, and has since the issuance of the patent and receiving notice thereof from the plaintiffs, and prior to and at the time of the filing of the said suit, sold price tag display moulding like Plaintiffs' Exhibits 2 and 3.

The defendant M. Greenspan & Co., Inc., in the second above-entitled suit, is a New York corporation, with its place of business at 1105 Metropolitan avenue, Brooklyn, N. Y., in this district, and has since the issuance of the patent and the receiving notice thereof from the plaintiffs, and prior to and at the time of the filing of the said suit, sold price tag display moulding like Plaintiffs' Exhibit 5.

Mouldings have been made in so many styles that surprise was expressed by a practical man, called as a witness, that a patent for moulding could be secured.

The moulding of the patent in suit is adapted to use for ornamental or useful purposes, but particularly for use as store furniture, and capable of being mounted vertically, horizontally, or at an angle, and presenting a pleasing appearance and mechanical means for holding tickets or display cards in desired positions.

The invention has another object, that is, to provide a moulding for receiving tags, tickets, display cards, and the like, in which the card is held bowed outwardly.

Another more specific object is to provide a moulding having a centrally arranged groove formed in an outwardly extending raised portion, with an overhanging shoulder at each edge of the moulding, so that a ticket or card placed beneath the overhanging shoulders, and resting on the outwardly extending portion of the moulding, will span the groove in such a way as to permit the card to be readily removed by placing a nail or other instrument beneath the card.

A further object is to provide such a moulding for cards, etc., which presents means, when in different positions, for straddling a shelf or for engaging an irregular surface, so that the moulding may be arranged and function efficiently as a crown, pilaster, or shelf edge.

The invention claimed by the plaintiffs, as I understand it, consists in providing a moulding of such contour that the price tags held therein are in a convex rather than a concave position, and in which the price tags are held by the pressure outwardly in the middle, by the central projecting portion of the moulding, and inwardly on both sides by the pressure of the under faces of the beads against the outer face of the price tag adjacent the upper and lower ends, and in which there is an inwardly projecting groove in the centrally projecting portion.

These suits are each based upon the three claims of the patent, of which claim 1 may be taken as typical, and reads as follows: "1. A moulding formed of a relatively long narrow strip of material, said strip having marginal beads at its opposite longitudinal edges, and an outwardly projecting portion arranged centrally between the beads, the beads having each an angular notch undercut therein, said outwardly extending portion having an inwardly projecting groove formed in the exposed face thereof, a pair of diverging surfaces extending from the opposite edges of the groove to form each one of the sides of the angular notch in the respective beads."

The disadvantages of the concave moulding and the advantages of the convex moulding for the purpose of store fixture display moulding are many and need not be recited.

The moulding of the patent in suit has met with considerable success, but a considerable factor in such success has been the assertion of the rights which plaintiffs claimed under the patent in suit, which has been brought to the attention of large users.

While both of the defendants are sued for the infringement of the three claims of the patent in suit, they have not set up exactly the same defenses.

The defendant Brooklyn Moulding Company, Inc., interposed the defenses of invalidity and noninfringement.

It contends that it is manufacturing under patent No. 1,943,168 to Doppel, and does not infringe.

The defendant M. Greenspan & Co., Inc. interposed the defenses of invalidity and noninfringement.

Defendants introduced in evidence seven patents alleged to be anticipations of the patent in suit.

■ The patent in suit has the presumption of validity, but even if valid it is in no sense a broad patent, and must be strictly limited to the form of the structure shown in the patent in suit.

The patents offered in evidence as anticipations do not anticipate, but they do strictly limit its construction.

The plaintiffs cannot broadly claim invention of a moulding in which the tag cards are held in a convex rather than a concave position, in view of the patent No. 1,864,656 to Le Beaumont, nor can they broadly claim invention of a moulding in which the price tags are held by the pressure outwardly in the middle, and by pressure inwardly on both sides, in view of patent No. 1,864,656 to Le Beaumont, and patent No. 1,694,639 to Brown, nor can they broadly claim invention of the inwardly projecting groove of the outwardly projecting portion, as there certainly would be no inventive skill necessary in providing the patent No. 1,694,639 to Brown with a centrally disposed longitudinal groove, as taught by Le Beaumont.

It was old and well known to the art to provide a moulding with undercut grooves for holding a card or the like in convex position.

Such a convex result is also shown by the following, aside from Brown and Le Beaumont, above referred to:

Barton, 467,848, January 26, 1892, Defendant's Exhibit 2.

Davis, 1,344,223, June 22, 1920, Defendant's Exhibit 3.

Parris, 1,541,655, June 9, 1925, Defendant's Exhibit 4.

McIntyre, 1,736,123, November 19, 1926, Defendant's Exhibit 6.

Schemmel, 1,900,769, March 7, 1933, Defendant's Exhibit 8.

The defendant Brooklyn Moulding Company, Inc., made its moulding under a license from the owner of patent to Harry B. Doppel, No. 1,943,168, for card or label holder, granted January 9, 1934, on an application filed March 23, 1933.

The patent in suit was cited on that application, and the patent issued over it.

The said Doppel patent discloses a long narrow strip of wood, having four undercut grooves, two along each edge, so that it will readily hold price cards of three different sizes, as shown in Fig. 1, and a centrally disposed stiffening rib extending lengthwise of the moulding, shown at 12 in the Doppel patent; the purpose of the rib being to stiffen the entire moulding and to cause the card to assume a convex position.

Plaintiffs' Exhibits 2 and 3 clearly show that the defendant Brooklyn Moulding Company, Inc., has closely adhered to the structure of the Doppel patent and not to the structure of the patent in suit.

The centrally positioned longitudinal groove 7 of the patent in suit is a feature set out as an object of the invention, in the specification of the patent in suit (p. 1, lines 15 to 18, 69, 70, 71, and 86 to 90, and page 2, lines 50 to 54), and claimed in each claim.

In the structure of the defendant Brooklyn Moulding Company, Inc., is found a centrally positioned longitudinal rib, which acts as a mechanical stiffener to the long narrow strips of moulding, provides a thickened portion through which the nails may be driven, and pushes against the under side of the card held by the moulding, causing it to assume a convex position.

■ The defendant Brooklyn Moulding Company, Inc., does not infringe, even if the patent in suit be valid.

■ The claims of the patent in suit read on the structure of the defendant M. Greenspan & Co., Inc., and if the patent in suit be valid, then the structure of M. Greenspan & Co., Inc., as shown in Exhibit 5, infringes.

We thus come to the question of the alleged prior knowledge and use by the Empire Moulding Company.

The character of proof required is high, but I saw and heard the witnesses and I believe them, father and son, Carl Kuehn and Charles Kuehn.

It is true that there is a lack of documentary evidence, but there is the stick Exhibit 11, with the samples 4, 5, and 6, with the date March 28, 1930, stamped on the back of each of them, samples 7 and 8, with the date March 29, 1930, stamped on the back of them, and samples 9, 10, and 11, with the date March 31, 1930, stamped on the back of them;

and Charles Kuehn testified that he stamped the dates on them.

I saw the stick and the samples that were removed, and I do not agree with the witnesses who say that the stick and samples have not been in existence from March, 1930.

With the thousands of samples of moulding that are made, it does not seem unreasonable to me that they were not specifically pointed out.

The samples anticipate the patent in suit, and the patent in suit is invalid.

A decree may be entered in each suit in favor of the defendants against the plaintiffs, dismissing the bill of complaint with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, in accordance with rule 70½ of the Equity Rules (28 USCA § 723) and rule 11 of the Equity Rules of this court.